IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

ROBERTO VELAZQUEZ,
    Plaintiff,

v.

WEXFORD HEALTH SOURCES,
INC., *et al.*,
    Defendants.

Case No. 4:25-cv-04232-JEH

### Merit Review Order

Plaintiff, proceeding *pro se*, filed a Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights while he was incarcerated at Hill Correctional Center ("Hill"). (Doc. 1). This case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A.

### I

In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

1

## II

Plaintiff files suit against Defendants Wexford Health Sources, Inc. ("Wexford"), Nurse Practitioners Kasey Kramer and Samantha Shinn, Dr. Kurt Osmundson, Medical Director Dr. Cole, Healthcare Unit Administrator ("HCUA") Nellie Boone, Illinois Department of Corrections ("IDOC") Director Latoya Hughes, Warden Tyrone Baker, Centurion, and John/Jane Does (HCU Medical Staff).

On May 20, 2023, Plaintiff noticed blood in his urine, which appeared to have been caused by a urinary tract infection.

During an appointment with Defendant Nurse Practitioner Shinn on January 23, 2024, Plaintiff complained of chest pain and swollen lymph nodes. The chest pain had been present since 2022, and a provider had already performed a chest x-ray. Defendant Shinn informed Plaintiff the x-ray was normal and ordered an EKG, but she did not address his swollen lymph nodes.

On January 25, 2024, Plaintiff was seen during nurse sick call for testicular pain. A urine analysis was performed which revealed blood in the urine. Defendant Nurse Practitioner Kramer ordered Bactrim (antibiotic) and an ultrasound on January 26, 2024. Plaintiff alleges Defendant Kramer failed to order the ultrasound "stat," which would have made it urgent.

The EKG was performed on February 1, 2024. An ultrasound was also scheduled that day, but it was rescheduled to February 8, 2024, and then postponed until February 13, 2024.

On February 9, 2024, Plaintiff was seen during nurse sick call for complaints of blood in his urine.

Plaintiff underwent an ultrasound on February 13, 2024, but he was not informed about the results. On an unspecified date, Plaintiff was seen at nurse sick call with further complaints of blood in his urine. Defendant John/Jane Doe, an

HCU medical staff member, informed Plaintiff that he was already scheduled with a provider, and there was nothing that could be done.

On February 21, 2024, Defendant John/Jane Doe rescheduled Plaintiff's labs and EKG to March 5, 2024.

Labs were drawn on March 5, 2024. The results revealed an extremely elevated prostate specific antigen level. Defendant Kramer submitted an urgent referral for a urology consult. Defendant Dr. Osmundson reviewed the lab and ultrasound results on March 8, 2024.

On March 14, 2024, Plaintiff was sent to OSF St. Mary's urology department for a consultation. Upon his return to Hill, he saw Defendant Kramer and then returned to his cell.

On March 15, 2024, Plaintiff was seen in the HCU because he was having difficulty urinating, and what little urine he produced had visible traces of blood. Defendant Kramer refused to see him and stated he already had an appointment scheduled with urology the following week. Plaintiff alleges the urology appointment did not occur until March 27, 2024.

On March 29, 2024, Plaintiff had a follow up appointment with Defendant Dr. Osmundson, who ordered a prostate biopsy and cystoscopy. To prepare for Plaintiff's biopsy and cystoscopy, Plaintiff received a physical examination on April 5, 2024. Labs and an EKG were ordered on April 11, 2024. The biopsy was performed at Graham Hospital on April 15, 2024. Upon his return to Hill, Plaintiff remained in the infirmary.

On April 16, 2024, Plaintiff informed Defendant John/Jane Doe that he was having lower abdominal and rectal pain and increased blood in his urine. He was given Ibuprofen and Tylenol.

On April 22, 2024, Defendant Shinn reviewed the biopsy results with Plaintiff and confirmed the biopsy indicated he had prostate cancer.

On April 25, 2024, Plaintiff was seen during nurse sick call by Defendant John/Jane Doe and requested a low bunk permit due to testicular pain. Defendant Shinn reviewed Plaintiff's chart, and despite her knowledge of his pain and cancer diagnosis, she denied the request for a low bunk permit.

On May 14, 2024, Plaintiff had a follow up appointment with the urologist. Based on the urologist's recommendations, Defendant Kramer ordered a PET scan to confirm the diagnosis and stage of the cancer.

On May 17, 2024, Defendant Kramer informed Plaintiff the PET scan confirmed he had prostate cancer, which had metastasized to the bladder. Defendant Kramer approved Plaintiff's request for a low bunk permit.

Due to the severity of his condition (terminal), Plaintiff saw Defendant HCUA Boone on May 21, 2024, to discuss creating a "Do Not Resuscitate" and living will.

On May 22, 2024, Plaintiff saw Defendant Shinn and complained of new masses and swollen lymph nodes. Defendant Shinn ordered an ultrasound.

During an appointment at the Illinois Cancer Care Center ("ICCC") on May 31, 2024, the specialist reviewed the PET scan, which revealed the cancer had spread to the pelvic region, L3 vertebrae, and lymph nodes.

On June 14, 2024, Plaintiff returned to the oncologist for a chemotherapy consultation.

On June 24, 2024, Plaintiff had a follow-up appointment with Defendant Dr. Osmundson. Plaintiff alleges Defendant Dr. Osmundson did not follow the ICCC's order, but it is unclear from Plaintiff's Complaint what orders he allegedly failed to follow.

Plaintiff returned to the ICCC on July 12, 2024. Plaintiff was instructed to follow up with Defendant Dr. Osmundson on July 19, 2024, to have labs drawn

and a dental cleaning before the next appointment on August 9, 2024, in order to begin treating the bone metastasis.

On July 17, 2024, Plaintiff placed a nurse sick call request for shooting pain and tailbone pain. Plaintiff saw Defendant Dr. Osmundson on July 19, 2024, but he failed to address Plaintiff's pain.

Plaintiff was prescribed Abiraterone (250 mg), a medication used to treat prostate cancer, on approximately June 3, 2024. Plaintiff was directed to take four tablets in the morning on an empty stomach. Plaintiff alleges the medication is a controlled substance and requires refills to be ordered in a timely manner. Due to Defendants Kramer, Shinn, Osmundson, and Cole's failure to administer the medication, write new prescriptions, and approve controlled substance/medication orders from the pharmacy, Plaintiff has often missed doses of Abiraterone for days or a week at a time. (Doc. 1 at p. 18).

Plaintiff also alleges the oncologist recommended that he return to the ICCC every three months for follow-up appointments and supplemental chemotherapy injections. Plaintiff alleges these appointments are often not scheduled, causing him to miss injections. Plaintiff alleges Defendants Wexford, Kramer, Osmundson, Shinn, Cole, Boone, John/Jane Doe medical staff members, and Centurion are responsible for reviewing specialist's follow-up instructions and approving referrals.

Plaintiff alleges he made Defendant Warden Baker aware of the missed appointments and medication dosages through numerous grievances and calls from family, friends, and the Mexican Consulate.

Plaintiff states that Defendant IDOC Director Hughes denied his grievances.

### III

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516,

522 (7th Cir. 2008). A claim of deliberate indifference contains both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id*. An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522. To satisfy the subjective component, the inmate must demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to the inmate's health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The prisoner must show that the defendant engaged in more than negligence and that the defendant's conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837). Plaintiff's allegations are sufficient to proceed on an Eighth Amendment claim against Defendants Dr. Osmundson, Nurse Practitioners Kramer and Shinn, and John/Jane Does (HCU Medical Staff) based on their alleged deliberate indifference to the treatment of his prostate cancer.

Plaintiff also alleges Defendants are liable for medical malpractice under Illinois law. Based on his allegations, Plaintiff is also permitted to proceed on a medical malpractice claim against Defendants Dr. Osmundson, Nurse Practitioners Kramer and Shinn, and John/Jane Does (HCU Medical Staff); however, Plaintiff is required to comply with the Illinois Healing Arts Malpractice statute by the summary judgment deadline. *See* 735 ILCS 5/2-622; *Young v. United States*, 942 F.3d 349 (7th Cir. 2019) (allowing *pro se* Plaintiff until summary judgment stage to comply with affidavit requirement). Plaintiff must file a

"certificate of merit," a written report by a health professional attesting that there is a "reasonable and meritorious cause for the filing." 5/2-622(a); *see also Hahn v. Walsh*, 762 F.3d 617, 628-33 (7th Cir. 2014) (Rule 2-622 applies to state law claim filed in federal court). The failure to do so will result in the dismissal of Plaintiff's medical malpractice claim.

Because the Court cannot effect service of process upon the Doe Defendants (HCU Medical Staff), the Court will order Defendant HCUA Boone, in her official capacity, to facilitate the identification of the Doe Defendants. *See Donald v. Cook Co. Sheriff's Dept.*, 95 F.3d 548, 556 (7th Cir. 1996) (concluding that a court may allow the case to proceed to discovery against a high-level official with the expectation that she will aid in identifying any Doe Defendants).

Plaintiff named Defendants Medical Director Dr. Cole and HCUA Boone as Defendants, but he failed to demonstrate how they were personally involved in any constitutional violation. Defendants cannot be held liable merely based on their supervisory positions, as the doctrine of *respondeat superior* (supervisor liability) does not apply to actions filed under § 1983. *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Officials are accountable for their own acts; they are not vicariously liable for the conduct of subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009); *Vance v. Rumsfeld*, 701 F.3d 193, 203-05 (7th Cir. 2012) (en banc). Defendants Dr. Cole and Boone (in her individual capacity) are dismissed without prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and § 1915A.

Plaintiff alleges he filed grievances about missed appointments with specialists and missed dosages of his medication, but Defendant Warden Baker

7

failed to take action. Plaintiff also alleges his family, friends, and even the Mexican Consulate called Defendant Baker to notify him about Plaintiff's medical needs. "[I]f a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Arnett*, 658 F.3d at 755 (citing *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005)); *see also Johnson v. Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006). "However, nonmedical officials can be chargeable with . . . deliberate indifference where they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Arnett*, 658 F.3d at 755 (internal quotations and citations omitted). Here, the Court finds Plaintiff's allegations are sufficient to proceed on an Eighth Amendment deliberate indifference claim against Defendant Baker.

Plaintiff alleges Defendant IDOC Director Hughes reviewed his grievances and denied his requests. Plaintiff alleges no further involvement by Defendant Hughes outside of the grievance process. Defendant Hughes cannot be held liable merely based on her supervisory position, as the doctrine of *respondeat superior* (supervisor liability) does not apply to actions filed under § 1983. *Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992). Therefore, Defendant Hughes is dismissed without prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and § 1915A.

Plaintiff filed suit against Defendants Wexford and Centurion, the IDOC's medical providers. Private corporations have potential liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-92 (1978), if they perform a governmental function and, in doing so, injure plaintiff through an unconstitutional policy or practice. *Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982). Since there is no *respondeat superior* liability under § 1983, Wexford and Centurion cannot be liable for the alleged misdeeds of its employees, as

employees are responsible individually. *Lewis v. City of Chicago,* 496 F.3d 645, 656 (7th Cir. 2007). "Liability may be based on (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policy making authority." *Taylor v. Wexford Health Sources, Inc.*, No.15-5190, 2016 WL 3227310, at *4 (N.D. Ill. June 13, 2016) (citing *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000)). Plaintiff does not allege that he was injured due to an express policy, widespread practice, or by a person with final policy making authority. Therefore, Defendants Wexford and Centurion are dismissed without prejudice for failure to state a claim under Rule 12(b)(6) and § 1915A.

### IV

Plaintiff filed a Motion to Request Counsel asking the Court to appoint an attorney to represent him. (Doc. 5). Plaintiff states he only completed grammar school in Mexico, and his primary language is Spanish. "There is no right to court-appointed counsel in federal civil litigation." *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014). When evaluating a Motion to Request Counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007). "When evaluating a plaintiff's competence, district courts should normally consider the plaintiff's literacy, communication skills, education level, and litigation experience." *Bracey v. Grondin*, 712 F.3d 1012, 1018 n.3 (7th Cir. 2013) (citing *Pruitt*, 503 F.3d at 655). The inquiry is individualized, taking all the relevant facts into consideration, including the stage of the litigation. *Navejar v. Igiola*, 718 F.3d 692, 696 (7th Cir. 2013). The

Court may also consider "the perceived merits of–or likelihood of success on–an indigent plaintiff's claims in its decision whether to allocate scarce pro bono counsel resources to the case before it." *Watts v. Kidman*, 42 F.4th 755, 764 (7th Cir. 2022).

Plaintiff attached letters to his Complaint from four attorneys who declined to represent him. (Doc. at pp. 5-9). However, the letters are not recent. The most recent letter is dated September 23, 2024. *Id.* at p. 8. Demonstrating a reasonable effort to obtain representation typically requires submitting letters from several attorneys declining assistance and copies of any documents which show Plaintiff tried to find an attorney. *See Olson*, 750 F.3d at 711. Plaintiff has not demonstrated a reasonable attempt to secure his own lawyer. Because Plaintiff has not satisfied the first prong of *Pruitt*, the Court does not address the second. *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021).

Plaintiff's Motion is DENIED, with leave to renew. If Plaintiff renews his motion, he is directed to attach additional copies of letters he sent to or received from prospective counsel, list the attorneys or law firms he contacted, and indicate whether he received a response.

**IT IS THEREFORE ORDERED:**

1)  According to the Court's Merit Review of Plaintiff's Complaint under 28 U.S.C. § 1915A, Plaintiff alleged sufficient facts to proceed on an Eighth Amendment claim against Defendants Dr. Kurt Osmundson, Kasey Kramer, Samantha Shinn, Tyrone Baker, and John/Jane Does (HCU Medical Staff) based on their alleged deliberate indifference to the treatment of his prostate cancer. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2)      Plaintiff will be given an opportunity to propound written discovery requests aimed solely at identifying the unknown John/Jane Doe Defendants, who are HCU medical staff members. Under the circumstances, the Court finds that Defendant Nellie Boone, the Healthcare Unit Administrator, is best suited to respond to this discovery. She shall remain a Defendant, in her official capacity only, for the sole purpose of identifying the John/Jane Doe Defendants. After that is done, Nellie Boone may move to be dismissed. Ultimately, it is Plaintiff's responsibility to provide the Court with the names and service addresses for the John/Jane Doe Defendants.

3)      Defendants Wexford Health Sources, Inc., Cole, Nellie Boone (in her individual capacity), Latoya Hughes, and Centurion are DISMISSED WITHOUT PREJUDICE for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915A. The Clerk is directed to TERMINATE Defendants Wexford, Cole, Hughes, and Centurion. Defendant Boone remains a Defendant in her official capacity.

4)      Plaintiff's Motion to Request Counsel [5] is DENIED.

5)      This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

6)      The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require

11

Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

7)　Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' position. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

8)　If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

9)　This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be

returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

10)     Defendants' counsel is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Defendants' counsel shall arrange the time for the deposition.

11)     Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

12)     Plaintiff shall be provided with a copy of all pertinent medical records upon request.

13)     Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

14)     The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

*It is so ordered.*

Entered: March 16, 2026

s/Jonathan E. Hawley
U.S. District Judge

13